THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH

| | |
|---|---|
| JOHN T. MILLER,<br><br>     Plaintiff,<br><br>v.<br><br>GABRIEL POWER, et al.,<br><br>     Defendants. | **AMENDED MEMORANDUM DECISION AND ORDER DENYING [47] MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>Case No. 2:20-cv-210-DBB<br><br>District Judge David Barlow |

Former inmate John T. Miller ("Plaintiff") alleges that Defendants violated his federal constitutional rights while he was incarcerated at the Draper Correctional Facility ("DCF") by denying him adequate medical care and retaliating against him for his use of the grievance process. Plaintiff further alleges that Defendants' actions violated Utah state constitutional protections against unnecessary rigor.

Defendants move for partial summary judgment on the grounds that Plaintiff failed to exhaust administrative remedies prior to filing suit as required by section 1997 of the Prison Litigation Reform Act of 1995 ("PLRA"), 42 U.S.C. §1997(e)(a)(2023). Defendants argue that Plaintiff's grievances were untimely and/or lacked adequate specificity to exhaust claims against some defendants. Plaintiff opposes the motion to dismiss on the grounds that prison officials waived any untimeliness by responding to the merits of the grievances, and that Plaintiff supplied the details required by the grievance policy.

Having considered the issues and the file the court finds that Defendants are not entitled to summary judgment as a matter of law. Defendants' Motion is therefore DENIED in its entirety.

## I. PLAINTIFF'S ALLEGATIONS

When Plaintiff was transferred to DCF on July 23, 2018, he had multiple pre-existing medical conditions. On July 18, 2018, he had been prescribed antibiotics for an infection in his right foot. Amended Compl. (ECF No. 34, at ¶ 14.) Plaintiff suffers from hemiplegic migraines which can cause symptoms similar to stroke, including partial paralysis. *Id.* at ¶ 96. Plaintiff is diabetic and also allergic to common forms of insulin. *Id.* at ¶ 74. Plaintiff's left foot suffers from charcot, which he describes as a "total collapse of arch with dislocations and broken bones." *Id.* at ¶ 70; Grievance No. 9909-02-576 (ECF No. 47-4, at 7.)

When Plaintiff arrived at DCF, Defendant P.A. Crockett encouraged Plaintiff to waive his intake physical. (ECF No. 34, at ¶ 21.) Plaintiff refused to waive the physical because of concern about his medical conditions. *Id.* at ¶ 24. Despite Plaintiff's refusal to waive the intake physical, Plaintiff never received one. *Id.* at ¶ 20. P.A. Crockett arranged for some of Plaintiff's medications, but Plaintiff did not receive the remaining doses of antibiotics for his foot. *Id.* at ¶¶ 25–27. On July 26, Plaintiff was transferred to a different housing unit within DCF. *Id.* at ¶ 28. Plaintiff showed the infection to DCF medical staff, who provided bandages and ointment, and encouraged him to submit a formal request for treatment. *Id.* at ¶¶ 29–30. Plaintiff submitted a healthcare request but did not receive an immediate response. *Id.* at ¶ 31.

Plaintiff's infection was finally examined by Defendant Dr. Power on Friday, August 3, 2018. *Id.* at ¶ 34. Dr. Power opened the wound, cleaned it, and told Plaintiff he would prescribe antibiotics and twice daily dressing changes to begin later that day. *Id.* at ¶ 35–37. However, when Plaintiff sought treatment later that day, his request was denied. *Id.* at ¶¶ 38–39. The next morning, Plaintiff was told that Dr. Power had not recorded a new prescription for Plaintiff's infection. *Id.* at ¶ 41.

On Sunday, August 5, Plaintiff's condition continued to deteriorate as he waited for treatment. *Id.* at ¶ 54. Plaintiff experienced fever, chills and vomiting. *Id.* at ¶ 48. Plaintiff eventually began to nod in and out of consciousness. *Id.* at ¶ 55. Plaintiff tried to go to the infirmary but lost consciousness in the effort. *Id.* at ¶ 56. When Plaintiff regained consciousness, he was taken to the University of Utah hospital. *Id.* at ¶¶ 57–58. At the University of Utah, Plaintiff underwent multiple surgeries, including amputation of a toe and partial amputation of the top of his foot. *Id.* at ¶¶ 60-63. After the surgeries, University of Utah medical staff recommended amputation at the knee because of potential complications related to Plaintiff's diabetes. *Id.* at ¶ 64. Plaintiff decided against the full amputation of his foot. *Id.* at ¶ 65. Plaintiff continued to suffer complications from the infection and surgeries for months. *Id.* at ¶ 68. The injuries to Plaintiff's right foot exacerbated the diabetic complications of Plaintiff's left foot. *Id.* at ¶¶ 69–70.

Plaintiff filed a level two grievance form (number 9909-02-576) dated October 9, 2018. (ECF No. 47, at ¶ 12.) The grievance alleges that Plaintiff placed a level one grievance into the prison mailing system on September 5, 2018.[1] *Id.* Plaintiff's level two grievance alleges that Plaintiff suffered severe health consequences, including a partial amputation of his foot, as a consequence of Defendants' failure to provide adequate health care between July 25, 2018 and August 3, 2018. *Id.* at ¶ 13. The grievance also raises complaints about the treatment of Plaintiff's charcot in his left foot including denial of previously prescribed medication.

Prison officials treated the October 9 grievance as a level one grievance because they had not received a level one grievance for these issues. *Id.* at ¶ 14; ECF No. 50 at 4–5. Prison

---

[1] The Utah Department of Corrections grievance coordinator claims the September 5, 2018 level one grievance was never received.

officials responded to the merits of Plaintiff's grievance without objection to its timeliness. (ECF No. 47-4, at 10.) Prison officials denied plaintiff his requested relief. *Id.*

Plaintiff pursued his administrative remedies through two levels of appeal. Prison officials continued to respond to the merits of his grievance without procedural objection. *Id.* at 13, 19. Prison officials ultimately provided Plaintiff with an unqualified statement of exhaustion. (ECF No. 47-4, at 19.)

Plaintiff filed a civil case against P.A. Crockett, Dr. Power and the Department of Corrections ("UDOC") based on the allegations in grievance 9909-02-576 in the Third Judicial District for Salt Lake County on or around Jan. 9, 2020. *See* Complaint and Jury Demand, (ECF No. 2-2.) Defendants removed the case to this court on March 30, 2020. Notice of Removal, (ECF No. 2.)

After Plaintiff filed his complaint in state court, he began to suspect that medical providers were retaliating against him by denying him medical treatment. (ECF No. 34, at ¶¶ 76–79.) For example, on April 10, 2020, Plaintiff was given the wrong type of insulin which triggered a seizure. *Id.* at ¶¶ 82–87. Plaintiff alleges that on June 19, 2020, Nurse Lee, who allegedly lacked authorization to alter prescriptions, reduced the dosage of Plaintiff's insulin prescription and falsely attributed the change to a doctor who was not on duty. *Id.* at ¶¶ 88–91. Plaintiff further alleges that medical providers with authority to correct the change refused to make the correction for four days, prolonging Plaintiff's risk of hyperglycemia. *Id.* at ¶ 90.

Plaintiff filed a level one grievance (number 9909-07-939) complaining of the problems with the administration of his insulin prescription on August 13, 2020. (ECF 50-1, at 4–7.) The four-page grievance included a single sentence mentioning the possibility that the problems were motivated by retaliation for Plaintiff's lawsuit. *Id.* at 7. Prison officials responded to the merits of

Plaintiff's complaints about insulin and their level three response included an unqualified statement of exhaustion. (ECF No. 50-1, at 9–10.)

At approximately 6:45 a.m. on November 13, 2020, Plaintiff requested treatment for a hemiplegic migraine. (ECF No. 34, at ¶ 99.) Prior to this incident, DCF medical personnel had provided Plaintiff with treatment specific to hemiplegic migraines. *Id.* at ¶ 98. However, on November 13, 2020, medical personnel did not immediately respond. *Id.* at ¶ 99–100. Medical staff later attributed the delay to Covid-19 protocols which were in place at the time. (ECF No. 47-5, at 7.) Plaintiff attempted to mitigate the impact of the oncoming migraine by taking over-the-counter migraine pills from his personal pill kit. *Id.* at ¶ 101. At approximately 8:00 a.m., Plaintiff requested additional treatment from Nurse Baker when he distributed medication on the morning pill line. *Id.* at ¶ 102. Nurse Baker promised to return with medical assistance. *Id.* Plaintiff lost consciousness due to the migraine before help arrived. *Id.* at ¶ 103. When Plaintiff regained consciousness, the left side of his body was paralyzed. *Id.* at ¶ 105. Nurse Baker eventually returned at approximately 12:30 p.m. but only offered more of the over-the-counter pills Plaintiff had already taken instead of the medication which had been previously administered by DCF personal for Plaintiff's hemiplegic migraines. *Id.* at ¶ 106. Allegedly, even though Plaintiff remained partially paralyzed, neither Nurse Baker, nor any other member of medical staff entered Plaintiff's cell to assess his condition. *Id.* at ¶ 107. The nurse did not request additional medical personnel to evaluate Plaintiff's condition. *Id.* Plaintiff's medical records suggest that medical personnel did not place an order for the hemiplegic migraine treatment which Plaintiff had previously been given during similar episodes. (ECF No. 47-5, at 7.) Allegedly, Nurse Baker later told Plaintiff that P.A. Merrill had ordered him not to provide the prescribed treatment for Plaintiff's hemiplegic migraine. *Id.* at ¶ 109. Plaintiff allegedly

remained partially paralyzed for three days but was not seen by a medical provider during that period. *Id*.

On November 16, 2020, Plaintiff submitted a level one grievance (number 9909-08-310) complaining of the failure to adequately care for his hemiplegic migraine. (ECF No. 47-5, at 2–3.) The grievance alleged that the lack of care was retaliation for Plaintiff's lawsuit. *Id*. at 2. The grievance identified "Nurse Baker, medical, [and] officers" as entities who had performed unacceptably. *Id*. Prison officials responded to the merits of Plaintiff's grievance and denied the requested relief. *Id*. at 7. After Plaintiff submitted two appeals through the grievance process, prison officials provided an unqualified statement of exhaustion. *Id*. at 16. Medical staff entered an order for a Toradol injection on November 18, 2020. (ECF No. 47-5, at 7.)

Following the migraine, Plaintiff regularly requested medical appointments only to have them cancelled on short notice. *Id.* at ¶ 112–13. Plaintiff was forced to wait six weeks for an appointment with a medical provider following his paralysis. *Id.* at ¶ 114. Plaintiff waited another six weeks for a follow up appointment, again experiencing a pattern of last-minute cancellations. *Id.* at ¶ 115.

Plaintiff filed a level one grievance (number 9909-09-274) on or around March 19, 2021. *See* ECF No. 47-6, at 2. The grievance alleged that Plaintiff's medical appointments between January and March 2021 had been cancelled by medical staff to retaliate against Plaintiff because of his lawsuit. *Id*. at 3. Prison officials responded to the merits of Plaintiff's grievance without objection to timeliness for any issues. *Id*. Prison officials issued Plaintiff an unqualified statement of exhaustion after Plaintiff completed two levels of appeals through the grievance process. *Id*. at 16.

6

## II. SUMMARY OF ARGUMENTS

### A.      Defendants' Motion for Partial Summary Judgment

Defendants move for partial summary judgment arguing that Plaintiff failed to exhaust his available administrative remedies. Defendants argue that Plaintiff's first cause of action against Defendants P.A. Crockett and Dr. Power must be dismissed because Plaintiff's grievance number 9909-02-576 (pertaining to the treatment of Plaintiff's infected foot, among other things) was untimely. Defendants next argue that Plaintiff's third and fifth causes of action against P.A. Merrill must be dismissed because Plaintiff failed to identify P.A. Merrill in grievance number 9909-08-310 (pertaining to the treatment of his hemiplegic migraines). Defendants then argue that Plaintiff only exhausted retaliation claims with regard to the cancellation of medical appointments, but not as to any claim against Nurse Lee, Nurse Baker, or P.A. Merrill. Specifically, Defendants argue that grievance ending in 9909-09-274 (pertaining to the cancellation of medical appointments in retaliation for Plaintiff's lawsuit) was submitted too late to preserve claims against Nurse Lee, Nurse Baker, and P.A. Merrill. (ECF No. 47, at 19.) Further, Defendants argue that Plaintiff's retaliation grievance mentions several medical staff members, but it does not name Nurse Baker nor Nurse Lee, and fails to address the specific care they provided. *Id.* at 18. Defendants also argue that while Plaintiff's level two retaliation grievance number 9909-09-274 mentions P.A. Merrill, it fails to allege that he retaliated against Plaintiff. *Id.* at 18-19.

### B.      Plaintiff's Response

Plaintiff opposes the motion, arguing that prison officials waived the affirmative defense of untimeliness when they addressed his grievances on their merits rather than rejecting them on procedural grounds. (ECF No. 50, at 7–11.) Plaintiff also argues that neither the PLRA, nor the

prison's grievance policy require inmates to identify future defendants in their grievances. *Id.* at 11–12. Plaintiff argues that each of his grievances alleged retaliation and all of them were fully exhausted. *Id.* at 12–13.

## C.    Defendants' Reply

Defendants' Reply argues that even if some issues in Plaintiff's grievances were addressed on the merits by prison officials, other issues were implicitly rejected on procedural grounds. (ECF No. 51, at 5–7.) Defendants argue that the grievance policy does require inmates to identify responsible parties because inmates are required to "articulate all relevant facts and information" in their grievances. *Id.* at 7–9. Defendants argue that Plaintiff's migraine grievance failed to allege facts that implicate P.A. Merrill in the incident. *Id*. at 9–10. Defendants next argue that the grievance policy requires retaliation claims to be presented separately from other grievances. (ECF No. 51, at 10.) Defendants argue that the only grievance which raised retaliation as a separate issue pertains only to the cancellation of appointments. Defendants conclude that to the extent Plaintiff grieved retaliation by Nurse Baker, P.A. Merrill and Nurse Lee those claims were comingled with his grievances of the underlying events and were therefore procedurally defective.

### III. LEGAL STANDARDS

## A.    Summary Judgement

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[A] mere factual dispute will not preclude summary judgment; instead there must be a genuine issue of material fact." *Cooperman v. David*, 214 F.3d 1162, 1164 (10th Cir. 2000). The court "look[s] at the factual record and the reasonable inferences to be drawn from the record in the light most

favorable to the non-moving party." *Self v. Crum*, 439 F.3d 1227, 1230 (10th Cir. 2006). "As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The movant has the initial burden to show "an absence of evidence to support an essential element of the non-movant's case." *Johnson v City of Bountiful*, 996 F. Supp. 1100, 1102 (D. Utah 1998). If the movant satisfies this burden, "the burden then shifts to the non-movant to make a showing sufficient to establish that there is a genuine issue of material fact regarding the existence of that element." *Id*. The non-movant must then "go beyond the pleadings and 'set forth specific facts' that would be admissible in evidence in the event of a trial from which a rational trier of fact could find for the nonmovant." *Lopez v. LeMaster*, 172 F.3d 756, 759 (10th Cir. 1999).

## B.      Utah Department of Corrections Grievance Policy

UDOC's grievance policy "provides inmates with the means to communicate their concerns and to resolve inequities and problems." UDOC Grievance Policy, FD02/01.03 (ECF No 47-3, at 4.) "In general, all inmate complaints are grievable except complaints against decisions and procedures of the Board of Pardons and Parole, disciplinary decisions, classification decisions, [Government Records Access and Management Act] decisions and issues not under the jurisdiction of [Division of Institutional Operations]." FD02/02.04 B. (ECF No 47-3, at 6–7.) Under the grievance policy, an inmate has seven working days from the date of a grievable incident, or from the date that the inmate knew or should have known about a grievable incident to file a level one grievance. FD02/03.01 A (ECF No. 47-3, at 14.) "All grievances must be filed on an individual basis by the respective inmate identifying the specific

9

nature of the grievance." FD02/02.06 A1 (ECF No. 47-3, at 7.) "The inmate, [sic] has the burden to articulate all relevant facts and information in the grievance." FD02/02.06 A4 (ECF No. 47-3, at 8.) The level one grievance form provides six lines to respond to the prompt "Specific nature of grievance (who, what, when, where and how.)" (ECF No. 47-3, at 17.) Inmates requiring additional space may attach supplementary pages. FD02/04.03 A (ECF No. 47-3, at 16.)

The facility is expected to investigate and respond within twenty-one working days from the time they receive a level one grievance. FD02/03.01 (ECF No. 47-3, at 14.) The facility may claim an extension by notifying the inmate within the original twenty-one working day period. FD02/02.06 F2 (ECF No. 47-3, at 11.) "The grievance should not be sent back to the inmate, unless it is frivolous or malicious, or unless it is impossible to process the grievance without additional information." FD02/02.06 A4 (ECF No. 47-3, at 8.) However, in certain circumstances, including failure to comply with the relevant deadline, a grievance may be returned to an inmate with a "problem form specifying the reasons for rejection." FD02/02.06 A5a (ECF No. 47-3, at 8.) "Each decision maker is required to provide the inmate with one copy of a written response which states the decision and the reasons for the decision." FD02/04.03 B (ECF No. 47-3, at 16.) "Retaliation is prohibited under the grievance procedures, and complaints of either formal or informal reprisals are separate grievable issues." FD02/02.06 I1 (ECF No. 47-3, at 13.)

If an inmate is dissatisfied with a grievance response, the grievance policy provides for up to two levels of appeal. The inmate has five working days from the date the level one response is received to submit a level two grievance FD02/03.01 C (ECF No. 47-3, at 14.) Likewise, the inmate has five working days from the date the level two response is received to

file a level three grievance. FD02/03.02 B (ECF No. 47-3, at 15.) There is no further

administrative remedy beyond a level three grievance. FD02/03.03 B (ECF No. 47-3, at 15.)

## C.     Exhaustion of Administrative Remedies

No action shall be brought with respect to prison conditions under 42 U.S.C. 1983, or any

other federal law, by a prisoner confined in any jail, prison, or other correctional facility until

such administrative remedies as are available are exhausted. 42 U.S.C. § 1997e (2023). "The

level of detail necessary in a grievance to comply with the grievance procedures will vary from

system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that

define the boundaries of proper exhaustion." *Jones v. Bock*, 549 U.S. 199, 218 (2007).

According to Tenth Circuit precedent, "[i]f a prison accepts a belated filing, and

considers it on the merits, that step makes the filing proper for purposes of state law and avoids

exhaustion, default, and timeliness hurdles in federal court." *Ross v. County of Bernalillo*, 365

F.3d 1181, 1186 (10th Cir. 2004) (overruled in part on other grounds by *Jones v. Bock*, 549 U.S.

199, 218 (2007)). A grievance which supplies the information requested by prison officials

"satisfies § 1997e(a)'s exhaustion requirement so long as it provides prison officials with enough

information to investigate and address the inmate's complaint internally." *Kikumura v. Osagie*,

461 F.3d 1269, 1285 (10th Cir. 2006). In *Kikumura*, the Tenth Circuit rejected the proposition

that a grievance must identify all future defendants even though the grievance policy was

ambiguous:

> The Supreme Court has cautioned that "the creation of an additional
> procedural technicality . . . [is] particularly inappropriate in a
> statutory scheme in which laymen, unassisted by trained lawyers,
> initiate the process." *Love v. Pullman Co.*, 404 U.S. 522, 526-27, 92
> S. Ct. 616, 30 L. Ed. 2d 679 (1972). Not only do inmates typically
> file their grievances pro se, but . . . . because they are incarcerated,
> the inmates often cannot investigate their own claims to identify the
> alleged wrongdoers. 28 C.F.R. §§ 542.14(a) & (c)(3); Am. Compl.

Ex. A-2; *Brown v. Sikes*, 212 F.3d 1205, 1209 n.4 (11th Cir. 2000) (noting that "[a]ppellate courts have acknowledged the difficulties faced by a prisoner in identifying alleged wrongdoers before filing a complaint."). Additionally, the BOP administrative remedy program does not provide inmates a procedural mechanism for amending their grievances to identify additional defendants or provide new information about their claims, and federal regulations prohibit inmates from raising new issues in their administrative appeals. 28 C.F.R. § 542.15(b)(2). Given this procedural context, we do not find it so "apparent" that inmates must be required to specifically identify the wrongdoers in their initial grievance.

*Kikumura v. Osagie*, 461 F.3d at 1283-84.

## IV. ANALYSIS

A.   **Plaintiff's First Cause of Action Against P.A. Crockett and P.A. Merrill (Failure to Provide Care for Plaintiff's Infected Foot)**

Defendants seek summary judgment on Plaintiff's first cause of action because Plaintiff's grievance number 9909-02-576 was untimely. For the reasons described below, Defendants' motion must be denied because Defendants fail to establish that the undisputed fact that plaintiff's grievance was untimely is material. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 ("Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.")

1.   **Undisputed facts relevant to Plaintiff's first cause of action**

Grievance number 9909-02-576 was untimely. *See* EDC No. 47, at ¶ 22 ("Under the UDC's grievance policy, [Plaintiff] had 7 days from the date of his interaction with Dr. Power, August 10, 2018, to grieve Dr. Power's medical care, however since he was taken to University Medical Center during that time, [Plaintiff] had 7 days from the date he returned to [sic] UMC, August 24, 2018, to grieve Dr. Power's Medical care.")

**2.      Prison officials waived timeliness of grievance number 9909-02-576**

Defendants assert the undisputed fact that grievance number 9909-02-576 was untimely as a basis for the court to grant them summary judgment on plaintiff's first cause of action against P.A. Crockett and Dr. Power. (ECF No. 47, at ¶ 22.) It is undisputed that Plaintiff submitted a level two grievance form dated October 9, 2018 which alleged that Defendants P.A. Crockett and Dr. Power failed to treat Plaintiff's infected foot when Plaintiff was transferred to DCF in late July. Plaintiff alleges that he also submitted a level one grievance on September 5, 2018. However, that grievance also would have been untimely. *See* FD02/03.0 1A (ECF No. 47-3, at 14 (inmates have seven working days from the time the inmate knew or should have known about a grievable incident to submit a level one grievance).) Plaintiff's grievance number 9909-02-576 was submitted more than seven working days after P.A. Crockett and Dr. Power failed to adequately treat Plaintiff's infected foot.

Nevertheless, Defendants fail to establish that the grievance's untimeliness is material to Plaintiff's claim. Plaintiff concedes that the grievance was untimely but asserts that prison officials waived the untimeliness by responding to the merits of his grievance. (ECF No. 50, at 7–9 (citing *Ross v. County of Bernalillo*, 365 F.3d at 1186).) In *Ross*, the Tenth Circuit held that "[i]f a prison accepts a belated filing, and considers it on the merits, that step makes the filing proper for purposes of state law and avoids exhaustion . . . hurdles in federal court." *Id*. The court notes that "[n]othing in the record suggests that the prison officials treated the grievance as untimely." *Id*. Plaintiff argues that under *Ross*, Defendants cannot raise the affirmative defense of untimeliness because DCF officials never objected to the timeliness of his grievances and ultimately provided unqualified letters of exhaustion.

Defendants attempt to distinguish *Ross* by arguing that prison officials did not specifically address the merits of P.A. Crockett and Dr. Power's care. (ECF No. 51, at 4.) Defendants suggest that the prison officials' silence on the specifics of care provided by P.A. Crockett and Dr. Power is sufficient evidence that the officials rejected certain issues as being untimely. Defendants argue that the prison officials "did not explore P.A. Crockett and Dr. Power's care related to Miller's right foot or address it in its response—an action that was reasonable because P.A. Crockett and Dr. Power were peripheral to the issue and the time to grieve their care had passed by several weeks." (ECF No. 51, at 6–7.)

Defendants' argument rests on *Patel v. Fleming*, 415 F.3d 1105 (10th Cir. 2005), in which the Tenth Circuit dismissed some issues presented in an untimely grievance for being unexhausted even though prison officials had responded to other issues on the merits. *See* ECF No. 51, at 4–7 (analyzing *Patel v. Fleming*, 415 F.3d 1105 (10th Cir. 2005)). However, *Patel* is distinguishable because here the DCF officials addressed the care for Plaintiff's infected foot in their responses and because, unlike here, the grievance policy in *Patel* did not require prison officials to articulate the reasons for their decision. *See* UDOC Grievance Policy, FD02/02.06 A.5 and E.1 (requiring DCF officials to provide reasons for their decisions), (ECF No. 47-3, Ex. A).

*Patel* involved an inmate who filed a grievance nine months after he was transferred from a Federal Correctional Institute in El Reno, Oklahoma, ("FCI El Reno") to a Federal Transfer Center in Oklahoma City and then to a Federal Correctional Institution in Bastrop, Texas ("FCI Bastrop"). Two months after his arrival at FCI Bastrop, the inmate filed a grievance complaining of the conditions of his confinement at FCI Bastrop, as well as exposure to secondhand smoke at his prior facility, FCI El Reno, *inter alia*. *Patel v. Fleming*, 415 F.3d at 1107–08. The officials at

FCI Bastrop who drafted the responses to the first two levels of the inmate's grievances declined to even mention the issue of secondhand smoke at FCI El Reno. When the inmate filed a complaint including claims for exposure to secondhand smoke at FCI El Reno, the magistrate judge recommended dismissal for failure to exhaust. *Id.* at 1108. The inmate asserted two arguments in support of his appeal. First, he argued that his complaint should not be dismissed due to the untimeliness of the grievance because the deadlines in the federal grievance policy are flexible. *Id.* at 1110. Second, he argued that he did not file his grievance earlier "because he was 'earnestly' attempting to resolve his concerns informally and did not want to 'rock the boat.'" *Id*.

The Tenth Circuit rejected these arguments and held that the inmate had failed to exhaust his administrative remedies. With regard to the inmate's argument regarding flexibility of timelines, the Tenth Circuit held that "while flexibility in accepting belated filings is encouraged [by the federal grievance procedures], such flexibility is not required." *Id.* citing 28 C.F.R. § 542.17. The Tenth Circuit also rejected the inmate's argument that he had been trying to resolve the situation informally. *Id*. ("An inmate cannot unilaterally extend the twenty-day time limit for making a formal filing based on a desire to resolve his or her claims informally."). Finally, the Tenth Circuit distinguished *Ross*, because neither of the FCI Bastrop officials' responses to the first two levels of grievances addressed the inmate's exposure to secondhand smoke at FCI El Reno nine months prior. *Patel v. Fleming*, 415 F.3d at 1111. Then, at the final level of review, the Office of General Counsel affirmed that the prior responses had adequately addressed plaintiff's grievances. *Patel v. Fleming*, 415 F.3d at 1107. Even though the Office of General Counsel's response included a paraphrase of the FCI El Reno's general policy regarding the placement of non-smokers with smokers, the response contained no analysis of the conditions

at FCI El Reno. *Id.* at 1111. The Tenth Circuit concluded that the paraphrased policy did not

amount to consideration on the merits under *Ross*:

> this explication of FCI El Reno's general policies does not amount
> to addressing the merits of Plaintiff's claim regarding FCI El Reno.
> For example, the response did not explore whether (1) Plaintiff was
> housed in a smoking unit at FCI El Reno; (2) Plaintiff was housed
> in a cell with a chain smoker; (3) institution needs required housing
> Plaintiff in a smoking unit and/or in a cell with a chain smoker; (4)
> Plaintiff was exposed to secondhand smoke; or (5) Plaintiff suffered
> actual harms as a result of this exposure. Thus, it is clear that neither
> the Warden, nor the Regional Director, nor the Office of General
> Counsel "accepted a belated filing, and considered it on the merits,"
> thereby "making the filing proper . . . and avoiding exhaustion,
> default, and timeliness hurdles in federal court."

*Id*.

In contrast to the situation in *Patel*, here the DCF officials' responses suggest that they

accepted the untimely grievance, investigated the care for Plaintiff's infected foot, and

determined the care to have been adequate. (ECF No. 47-4, at 10 ("You indicate concerns with

the medical care you have received for a foot sore/ulcer. . . . Medical care for your foot has been

extensive and is ongoing."); *Id.* at 13 ("Your medical record indicates your left[2] [sic] foot is

much improved from when it was infected. This process has taken an extended period of time

and much work from medical staff and you. Please continue to be proactive when you have foot

concerns.").) Although DCF officials did not tease out care provided by individual medical

providers, Defendants have supplied no authority supporting the proposition that *Ross* requires

such specificity.

---

[2] Plaintiff grieved medical care for both of his feet. His right foot was partially amputated because of an infection. His left foot suffers neurologic complications from diabetes described as "charcot foot." *See* ECF No. 34, at ¶ 70. Nothing in the record before this court suggests that Plaintiff suffered an infection in his left foot. Therefore, it is reasonable to infer that the level two response intended to indicate that Plaintiff's right foot was much improved from when it was infected.

Furthermore, in contrast to the federal grievance policy at issue in *Patel*, the UDOC grievance policy requires officials to provide an explanation if they exercise their discretion to reject a grievance on procedural grounds. *Compare* 28 C.F.R. § 542.17 ("The Coordinator at any level may reject and return to the inmate <u>without response</u> a Request . . . that . . . does not meet any other requirement of this part.") (emphasis added), *with* FD02/02.06 A5 (ECF No. 47-3, at 8 ("In some instances a grievance may be returned to the inmate unprocessed, with a problem form specifying the reasons for the rejection.").) In that context, it is possible to conclude that the grievance responses in *Patel,* which responded to some of the issues presented in an untimely grievance but remained silent on other issues, still complied with the relevant policy requirements for rejection on procedural grounds. In contrast, UDOC's grievance policy requires officials to provide an explanation for a procedural rejection. Nothing in the record suggests that DCF prison officials complied with the UDOC policy requirement to notify Plaintiff of a procedural rejection. Instead, prison officials responded with an unqualified statement of exhaustion. *See*, *e.g.*, ECF No. 47-4, at 19 ("There is no further administrative review available. If you are dissatisfied with this response and wish to take further action, this level three grievance response will serve as evidence you have exhausted the administrative remedy process.")

Therefore, *Patel* is inapposite. Defendants have failed to establish that the untimeliness of grievance number 9909-02-576 is material to Plaintiff's claims. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 248. ("Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.")

Defendants fail to establish that prison officials treated the grievance as untimely. DCF officials were required by the grievance policy to articulate the reasons for their decision. *See*

FD02/04.03 B (ECF No. 47-3, at 16.) DCF officials gave no indication that they rejected any of Plaintiff's claims as untimely. DCF officials waived the untimeliness by accepting the grievance and responding to the merits without objection. *See Ross v. County of Bernalillo*, 365 F.3d at 1186 (10th Cir. 2004) ("If a prison accepts a belated filing, and considers it on the merits, that step makes the filing proper for purposes of state law and avoids exhaustion, default, and timeliness hurdles in federal court.")

Defendants are not entitled to summary judgment on Plaintiff's first cause of action against P.A. Crockett and Dr. Power because they have failed to identify an undisputed material fact which would preclude a reasonable fact finder from finding in Plaintiff's favor. Defendants' motion for summary judgment on Plaintiff's first cause of action against P.A. Crockett and Dr. Power is therefore DENIED.

**B.    Plaintiff's Third Cause of Action Against P.A. Merrill (Failure to Provide Proper Care for Plaintiff's Hemiplegic Migraine)**

Plaintiff's third cause of action alleges that P.A. Merrill colluded to deny him proper care for his hemiplegic migraine in retaliation for his lawsuit. (ECF No. 34, at ¶ 137. ("On November 12, 2020, however, Nurse Baker and P.A. Merrill worked in concert to deprive [Plaintiff] of prescribed treatment assessment during a hemiplegic migraine.").) Plaintiff's complaint further alleges that "[w]hen [Plaintiff] later asked Nurse Baker why he did not provide [Plaintiff] with his Toradol shot or migraine cocktail Nurse Baker replied that P.A. Merill [sic] had ordered Baker not to provide the prescribed treatment." (ECF No. 34, at ¶ 109.)

Defendants argue that Plaintiff failed to exhaust his administrative remedies for this claim because he failed to identify P.A. Merrill or describe the alleged collusion in grievance 9909-08-310. (ECF No. 47, at 17–18 ("The grievance makes no mention of, or reference to, Merrill."); ECF No. 51, at 9 ("Most notably, the grievance does not mention any other employee, known or

unknown, that was present or had any part in the incident.").) Defendants' motion rests on their argument that the grievance policy's requirement that inmates "articulate all relevant facts and information" requires inmates to supply the names of each individual involved in the grieved incident, or at the very least, to describe the involvement of unknown actors in their grievances. (ECF No. 51, at 7–8 (citing FD02/02.06 A3).) Defendants suggest that Plaintiff's failure to describe P.A. Merrill's potential involvement denied the prison administrators "a fair opportunity under the circumstances to address the problem." *Id*. (citing *Johnson v. Johnson*, 385 F.3d 503, 522 (5th Cir. 2004)).

Plaintiff does not contest that grievance 9909-08-310 fails to identify P.A. Merrill by name, but argues he was not required to "name all defendants" to exhaust his administrative remedies. (ECF No. 50, at 11–13 (citing *Jones v. Bock*, 549 U.S. at 211).)

### 1.   Undisputed facts relevant to Plaintiff's third cause of action

Grievance number 9909-08-310 does not reference P.A. Merrill. *See* ECF No. 47, at ¶ 26; ECF No. 50, at 5 ("The Grievance did not reference P.A. Merrill because [Plaintiff] did not know P.A. Merrill was the medical provider responsible for denying him care.")

Plaintiff's grievance number 9909-08-310 alleges that:

- At around 6:40 a.m. on November 13, 2020, Plaintiff experienced the onset of a hemiplegic migraine and requested medical assistance. (ECF No. 47-5, at 2.)

- Nurse Baker arrived at Plaintiff's 30 or 40 minutes later as part of the "morning pill line" but declined to evaluate Plaintiff or provide additional treatment for the migraine. *Id.* at 2–3.

- As the migraine progressed, the pain caused Plaintiff to lose consciousness. *Id.* at 3.

- When Plaintiff eventually regained consciousness, he discovered that the left side of his body was paralyzed. Plaintiff made repeated requests for medical assistance. *Id*.

- An officer attended Plaintiff's cell for more than two hours during the incident. *Id*.

- Plaintiff begged the officer attending his cell to call for medical assistance.

- The officer told Plaintiff that he had already informed his superior of the request and suggested there was nothing further that he could do. *Id*.

- "No IMS was ever called… At no time did medical come into my cell and check my vitals. No IMS was called to take me to the Infirmiry [sic]."

### 2.      Plaintiff was not required to name all Defendants in his grievance

Defendants' first argument, that Plaintiff failed to exhaust his administrative remedies against P.A. Merrill because grievance number 9909-08-310 failed to identify P.A. Merrill by name, is unpersuasive. The UDOC's grievance policy requires inmates to supply "all relevant facts and information" in their grievances. FD02/02.06 A4 (ECF No. 47-3, at 8.) Defendants argue that this requirement requires inmates to supply the names of each individual involved in the grieved incident, or at the very least, to describe the involvement of unknown actors in their grievances. (ECF No. 51, at 7–8.)

This court has rejected a similar argument based on a previous version of the grievance policy. *See Williams v. Blood*, No. 2:13-cv-601, 2016 U.S. Dist. LEXIS 133517. When the plaintiff in *Williams* filed his grievance, UDOC's grievance policy stated

> [t]he inmate as the moving party, has the burden to articulate all relevant facts and information in the grievance, even if inadequately or unartfully drafted. However, the grievance should not be sent back to the inmate, unless it is not possible to process the grievance without additional information. FDr02/02.08A4.

*Williams v. Blood*, at *2. The policy further stated that, "[I]nmates have the burden of providing all known facts and information regarding a complaint." *Id*. (quoting FDr02/03.01B.) The *Williams* defendants moved for summary judgment on the grounds that the policy requirement to state all "relevant facts" in a grievance required inmates to provide the names of each defendant. *Williams v. Blood*, at *5–6. This court rejected the defendants' argument on multiple grounds.

First, this court observed that the United States Supreme Court's 2007 decision in *Jones v. Bock* had put the UDOC on notice that its policy language would not be interpreted to require the naming of individual defendants unless the requirement were explicit. *Williams v. Blood*, at *6. The *Williams* decisions reasoned that

> The Supreme Court has put UDOC squarely in the driver's seat, controlling its own destiny in lawsuits of this type. If the grievance policy was changed to require names in grievances, then prisoners simply could not complete grievance processes without them. UDOC would then need not argue that a name is implicitly a relevant fact, or that the fact that its form contains a space for "who, what, when, where and how" transforms the specification of a defendant's name into a requirement. There is simply no need for an inmate to have to guess whether her failure to supply a name will be fatal to her grievance.

*Id.*

The UDOC's grievance policy has been amended. The relevant section of the policy now reads "[t]he inmate, [sic] has the burden to articulate all relevant facts and information in the grievance." FD02/02.06 A6 (ECF No. 47-3, at 8.) The amended language still does not clearly require inmates to name all future defendants in their grievances.

### 3. Plaintiff provided sufficient facts for DCF officials to investigate P.A. Merrill's alleged participation

Defendants argue that Plaintiff failed not only to name P.A. Merrill, but also that the allegations in grievance number 9909-08-310 actually preclude P.A. Merrill's participation.

Plaintiff's grievance describes his repeated requests for additional treatment for his hemiplegic migraine. (ECF No. 47-5, at 2–3.) The grievance alleges that Plaintiff was given conflicting information about whether medical help had been called. According to the grievance, the officer attending Plaintiff's cell during the incident told Plaintiff that Sgt. Strong had assured him that "medical is on its way." *Id*. at 3. But when Plaintiff asked Sgt. Strong why no IMS was called, he told Plaintiff that he had not called one because Nurse Baker had cleared Plaintiff at pill line. *Id*. Based on these allegations Defendants argue that "[i]t is reasonable to conclude that if no one involved with the incident called medical, that Merrill could not have denied [Plaintiff] care." (ECF No. 51, at 9.)

However, it does not follow that P.A. Merrill could not have colluded to deny Plaintiff medical care if no IMS was called on November 13, 2020. Plaintiff's Amended Complaint alleges that Nurse Baker told Plaintiff that P.A. Merrill had ordered Nurse Baker not to administer a Toradol shot for Plaintiff's migraine on November 13, 2020. (ECF No. 34, at ¶ 109.) The level one response to grievance 9909-08-310 suggests that the prison's investigation into the incident was limited to a review of Plaintiff's medical records. (ECF No. 47-5, at 7 ("I have read your grievance and reviewed your chart.").) The response states that there was no prescription for a Toradol injection in Plaintiff's file on November 13, 2020, but that an order was made on November 18, five days after Plaintiff's migraine. (ECF No. 47-5, at 7.) There is no indication that the respondent spoke with Nurse Baker about why treatment for the migraine was delayed for five days.

Plaintiff's grievance provided DCF officials adequate information to investigate the possibility that medical staff had colluded to deny Plaintiff treatment for his migraine. Plaintiff's grievance suggested that unidentified members of DCF medical staff were involved in the denial

of care for his migraine. The grievance complained that three entities had handled his migraine unacceptably: "Nurse Baker, medical, [and] the officers." (ECF No. 47-5, at 2.) In this case, Plaintiff's use of the term "medical" in addition to naming the individual he knew to have been involved supplied prison officials with adequate information to investigate the possibility that an unnamed member of DCF medical staff could have been involved in the decision to withhold a Toradol shot and migraine cocktail from Plaintiff on November 13, 2020. *See Kikumura v. Osagie*, 461 F.3d at 1285 ("[W]e hold that a grievance satisfies § 1997e(a)'s exhaustion requirement so long as it provides prison officials with enough information to investigate and address the inmate's complaint internally.") Taking reasonable inferences from the record in the light most favorable to Plaintiff as the non-moving party, if DCF officials had asked Nurse Baker if any other medical personnel were involved in Plaintiff's care on November 13, or why Nurse Baker declined to administer a Toradol shot, instead of limiting their investigation to Plaintiff's medical files, Baker may have told them that P.A. Merrill had ordered him not to provide the treatment. *See Self v. Crum*, 439 F.3d at 1230 (10th Cir. 2006) (The court "look[s] at the factual record and the reasonable inferences to be drawn from the record in the light most favorable to the non-moving party.")

Grievance number 9909-08-310 supplied DCF officials enough information to investigate and address Plaintiff's complaint and potentially to discover P.A. Merrill's alleged involvement. Therefore, Defendants fail to establish that Plaintiff failed to exhaust his administrative remedies with regard to P.A. Merrill. Defendants' motion for summary judgment on Plaintiff's third cause of action against Merrill is therefore DENIED.

**C.      Defendants' Motion for Summary Judgment on Plaintiff's Fifth Cause of Action (Retaliation)**

Defendants move for summary judgment on Plaintiff's fifth cause of action on the basis that grievance number 9909-09-274 failed to exhaust Plaintiff's retaliation claims with regard to Defendants Nurse Lee, Nurse Baker and P.A. Merrill. (ECF No. 47, at 19.) Plaintiff's fifth cause of action alleges that Nurse Lee, Nurse Baker and P.A. Merrill each retaliated against Plaintiff because of his lawsuit. Plaintiff alleges that Nurse Lee retaliated against Plaintiff by falsifying a change to his insulin prescription. (ECF No. 34, at ¶¶ 156–57.) Plaintiff alleges that Nurse Baker and P.A. Merrill retaliated against Plaintiff by conspiring to deny Plaintiff care for a hemiplegic migraine. *Id*. at ¶¶ 158–59. Defendants assert that Plaintiff only properly grieved retaliation in grievance number 9909-09-274 because references to retaliation in other grievances were comingled with grievances for the underlying incidents. Defendants argue that Plaintiff's claims for retaliation against Nurse Lee, Nurse Baker and P.A. Merrill must be dismissed because grievance number 9909-09-274 did not pertain to those defendants and was filed more than seven working days after Plaintiff's interactions with them.

Plaintiff opposes the motion to dismiss, arguing that Plaintiff grieved retaliation in three grievances, number 9909-09-274 (cancellation of medical appointments), 9909-08-310 (denial of care for hemiplegic migraine) and 9909-07-939 (alteration of insulin prescription). (ECF No. 50, at 12–13.) Plaintiff notes that all three grievances were exhausted. *Id.* at 13.

**1.      Defendants fail to establish that Plaintiff was required to grieve retaliation separately.**

Defendants' argument that Plaintiff was required to present his retaliation grievances in separate grievances fails. Defendants argue that "[t]he Grievance Policy allows an inmate to grieve retaliation, however only as a 'separate grievable issue.'" (ECF No. 51, at 10, (quoting

24

FD02/02.06 I1).) The term "separate grievable issue" derives from the following provision in the grievance policy: "[r]etaliation is prohibited under the grievance procedures, and complaints of either formal or informal reprisals are separate grievable issues." FD02/02.06 I1 (ECF No. 47-3, at 13.) Defendants offer no authority to support their interpretation of the term "separate grievable issue" to mean that retaliation must be presented in a separate grievance. The plain meaning of the retaliation provision suggests that retaliation creates an additional issue that may be grieved independently from the underlying incident, not that retaliation must be presented in a separate grievance. UDOC could have drafted an explicit requirement that retaliation must be grieved separately from other issues in the grievance policy. It did not.

There is no evidence that DCF officials interpret the grievance policy to require separate grievable issues to be presented in separate grievances. For example, grievance number 9909-02-576 grieved multiple issues: the care for Plaintiff's infected right foot and several complaints pertaining to treatment for his collapsed left arch. Prison officials responded to each issue without procedural objection. *See* ECF No. 47-4, at 13.

Because the grievance policy contains no clear requirement that separate incidents must be grieved separately, and Defendants offer no authority to support the proposition, this court declines to impose such a requirement. *See Kikumura v. Osagie*, 461 F.3d at 1283–84 (quoting *Love v. Pullman Co.*, 404 U.S. at 526-27 ("The Supreme Court has cautioned that 'the creation of an additional procedural technicality . . . [is] particularly inappropriate in a statutory scheme in which laymen, unassisted by trained lawyers, initiate the process.'"). Defendants fail to establish that the grievance policy requires retaliation to be grieved separately.

Therefore, Defendants' argument that Plaintiff failed to exhaust his administrative remedies because he did not grieve retaliation by Nurse Lee, Nurse Baker, and P.A. Merrill separately from the underlying incidents is unpersuasive.

**2.      Plaintiff exhausted his retaliation claim against Nurse Lee in grievance 9909-07-939**

Grievance number 9909-07-939 alleges a series of problems with the administration of Plaintiff's insulin prescription. The final sentence of the grievance notes that Plaintiff hoped "this '<u>is not</u>' '<u>retaliation</u>' for [his] law-suit [sic]." (ECF No. 50-1, at 7 (emphasis in original).) Defendants concede that grievance number 9909-07-939 raised the possibility that the incidents alleged in that grievance were retaliatory. (ECF No. 51, at 11 ("[The grievance] contains a single sentence on the fourth supplemental page that [Plaintiff] hopes any issue with his insulin is not retaliation.").) However, Defendants proceed to argue that "Because [Plaintiff] did not grieve retaliation, it was not addressed nor was it mentioned in his exhaustion letter." *Id*.

**a.      Undisputed facts relevant to Plaintiff's fifth cause of action against Nurse Lee**

Plaintiff's level one grievance numbered 9909-07-939 claimed that his "diabetic insulin treatment order was not being followed as ordered or being changed. . . . It also noted 'I hope this is not retaliation for [his] lawsuit.'" (ECF No. 50, at 6, (quoting ECF No. 51-1, at ¶ 7) (internal citations omitted).)

**b.      Defendants fail to establish that Plaintiff failed to grieve Nurse Lee's alleged retaliation**

The Tenth Circuit has held that a grievance which provides the information explicitly requested by the grievance policy satisfies the PLRA's exhaustion requirement if it provides prison officials with enough information to investigate and address the inmate's complaint internally. *Kikumura v. Osagie*, 461 F.3d at 1285. Defendants offer no authority to support their

position that Plaintiff's single sentence failed to supply prison officials with an adequate opportunity to investigate the possibility that the administration of his insulin prescription was being used by medical personnel to retaliate against Plaintiff for his lawsuit. Neither the grievance policy nor the grievance form articulate the degree of specificity required to grieve retaliation. This court concludes that grievance number 9909-07-939 provided prison officials with sufficient information to investigate whether the changes to Plaintiff's insulin prescription were retaliatory. Therefore, Defendants' argument that Plaintiff failed to grieve his allegation that Nurse Lee retaliated against him fails.

Finally, Defendants' argument that grievance number 9909-09-274 was untimely with regard to Nurse Lee is moot because Plaintiff adequately grieved retaliation against Nurse Lee in grievance number 9909-07-939.

Defendants are not entitled to summary judgment on Plaintiff's fifth cause of action against Nurse Lee because they have failed to identify an undisputed material fact precluding a reasonable trier of fact from finding in favor of Plaintiff. *See Lopez v. LeMaster*, 172 F.3d at 759. Defendants' motion for summary judgment on Plaintiff's fifth cause of action against Nurse Lee is therefore DENIED.

### 3. Plaintiff exhausted his retaliation claim against Nurse Baker and P.A. Merrill in grievance 9909-08-310

Grievance number 9909-08-310 alleges that medical staff denied Plaintiff adequate treatment for a hemiplegic migraine on November 13, 2020. The grievance states "I personally consider this 'retaliation' for my current lawsuit." (ECF No. 47-5, at 2.) The level one response addresses the issue of retaliation directly: "Your claim that this is retaliation for your current law suit [sic] is unfounded as the officers and RN Baker are probably both unaware of your pending litigation." Id. at 7.

Plaintiff's level one grievance does not name P.A. Merrill, but it provided prison officials sufficient information to investigate the possibility that other medical staff members may have been involved and the possibility that the lack of treatment was retaliatory. Therefore, Defendants' argument that Plaintiff failed to grieve his allegation that Nurse Baker and P.A. Merrill retaliated against him fails.

Defendants' argument that grievance number 9909-09-274 was untimely with regard to Nurse Baker and P.A. Merrill is moot because Plaintiff adequately grieved retaliation against them in grievance number 9909-08-310.

Defendants are not entitled to summary judgment on Plaintiff's fifth cause of action against Nurse Baker and P.A. Merrill because they have failed to establish that Plaintiff failed to grieve retaliation against Nurse Baker and P.A. Merrill. Defendants' motion for summary judgment on Plaintiff's fifth cause of action against Nurse Baker and P.A. Merrill is therefore DENIED.

## V. CONCLUSION

The undisputed facts here show that Defendants are not entitled to summary judgment as a matter of law.

Accordingly, **IT IS ORDERED** that:

1.      Defendants' Motion for Partial Summary Judgment is **DENIED** in its entirety.

DATED this 2nd day of February, 2024.

BY THE COURT:

JUDGE DAVID BARLOW
United States District Court

28